My opinion, upon the whole, is, that the decree be affirmed.
JUDGE ROANE.
The tenor of the deed from Charles Carter to Jones, evidently imports a purchase by the latter of a specific ascertained tract of land, and nota moiety of a larger tract. It recites that Charles Carter had contracted for the sale of “his tract of land” called Goose Creek, and conveys “all that tract of land” called Goose Creek Tract, &c. whereas, if any undivided moiety of a larger tract had been contemplated, he would have conveyed all that his undivided moiety of the said tract. The deed, it is true, annexes the words “conveyed by Robert Carter to Charles Carter, by deed of 14th August, 1789;” and if it had stopped there, there would have been greater reason to construe it a conveyance of an undivided moiety. But it proceeds thus, “and was said to be a moiety” of the tract granted in 1727. This last expression evidently applies to a specific tract, which is said or supposed to contain a moiety of the tract granted in 1727. Such an expression is inconsistent with a conveyance of a full and undivided moiety. In that case the conveyance would have been of a full and undivided moiety merely. With respect to the criticism on the term “comprehending,” by the appellants’ counsel, it would have been correct if a greater interest had been in the first place clearly shewn to have been conveyed. In that case the specification might be construed to be commensurate with the basis on which it was intended to be bottomed. Such was the case in the instance of Tabb v. Archer ;(b) but, without a petitio principii, that construction will not fit the case before us. This construction of Jones’s purchase is made more manifest by the reference in the deed to Garland’s survey, and to a specification of the lots thereof, assigned to Charles Carter, and by him sold to Jones. The outward lines of those lots specify as ^completely the metes and bounds of the land conveyed by the deed, as if the deed had been silent as to those lots, and had described that line by mere course and distance only. It is further to be remarked, that the sense of both these parties (Jones and Charles Carter) is manifested, as to the construction of the contract in this particular, by Charles Carter’s entry into the particular lots assigned to him, and now held by Jones, and by the actual survey of their agent Thornley. He did not survey the whole tract, but surveyed this as a specific tract of land by the metes and bounds resulting from the lots mentioned in the deed. That survey not being objected to in the Court below is to be read here, and to have as much effect here as there. It will not be pretended, however, I presume, that a deposition not objected to in the Court below, and containing inter alia, for example, mere hearsay testimony, will (by the mere omission to object to the deposition in the inferior Court) exalt that hearsay testimony into legal evidence. The omission to object in the Court below only amounts to an agreement that it shall be read in the, appellate Court to avail quantum valere potest. The case just put of hearsay evidence seems analogous to the one before us. In the case of Johnson v. Brown, (c) the survey in question was authenticated by the surveyor’s deposition, and was made part thereof. But in the case of Lee v. Tapscott,(d) it was held, that a private survey is no evidence against those who were strangers to it. This is conclusive to shew that Thornley’s survey is not complete to bind Robert Carter, if it has no greater effect in this Court than in the Court below. But what does that survey prove, even as between Charles Carter and Jones ? Only that Charles Carter’s dividend of land contains fewer acres than Garland’s survey purported. But does it further prove, that Robert Carter’s dividend does not also fall short in the same ratio ? Certainly not; for *859 that dividend has not even vet been surveyed; and, if it does fall short in the same ratio, no cause of action exists in Jones’s representatives, ^'admitting' them to stand precisely in Charles Carter’s shoes, and that Charles Carter was not barred on this subject by the division with Washington. Thornley’s survey, therefore, however it may be between Charles Carter and Jones, and in relation to Charles Carter’s dividend of land, does not affect Robert Carter, nor shew that he actually stands on more advantageous ground in respect of quantity than the present appellant. The natural presumption on the contrary is. that if Garland’s survey does not hold out as to a part thereof, it will be equally deficient in relation to the whole tract. As, therefore, neither Ihe whole tract, nor Robert Carter’s particular dividend of land, has been surveyed, even by Thorn-ley, the case of the appellants is incomplete to shew an injury, even in the view that they are now entitled to a moiety of the tract of 11,375 acres. That survey, if made, might, on the contrary, shew unequivocally, (by Robert Carter’s dividend being more deficient,) that the present appellants have no cause of action against him. but, on the contrary, that they hold land which, on the pretension now set up, the representatives of Robert Carter are entitled to recover. If, therefore, no inequality of partition is shewn to exist in the case before us, it is unnecessary to consider the question as upon the doctrines of the law which apply to unequal partitions ; though I doubt not the doctrines stated by the Judge who preceded me are correctly stated. ‘
This view of the case is conclusive against the present appellants. But as (to admit the most) it is doubtful whether they, or the representatives of Charles Carter, are entitled to the subject of the present claim, (if any one is entitled,) those representatives ought certainly to be parties before their interest in this particular can be affected. In that case they would have it in their power to exhibit the agreement of October, 1794, with Jones, which he did not think proper to do, and which therefore raises a presumption against him. As it is not, however, proper to. hold out any inducements to those representatives to engage in litigation for the land now claimed, I will repeat, that, *from this case, as it now appears to us, I do not see that even they would have any title. Robert Carter conveyed to Charles Carter, in August, 1789, an undivided moiety of the original tract; and, it being important that a specific division should take place between them, one was made in June, 1790. It is not shewn, nor is there the least ground to believe, that any misrepresentation or deception was practised towards Charles Carter, in making it. He had a long and ample opportunity to know the quantity of the land, and even to make a survey thereof. Garland’s survey, by which they agreed to divide, being made as long ago as the year 1755, could not possibly have been made with a view to any deception in this particular ; and if it had, Robert Carter might, in the division, have been himself injured as well as his adversary. But any such pretence is ridiculous. If the lots in Garland’s survey have not held out, and, even if there was, in the year 1755, a design in making those lots appear larger than they really were, on account of the rents to be paid by the tenants, such error would run through the whole survey, and thus demolish the pretension that the other moiety (Robert Carter’s) may still hold out its purported quantity, or more. With respect to the partition, division, and allotment, made by Bushrod Washington and Charles Carter, the authority of the former, as attorney for Robert Carter, is admitted by Charles Carter in the instrument of division itself; and, besides, Bushrod Washington seals the paper, and annexes his character of “Attorney for Robert Carter.” This would seem to me, amply sufficient to make the division valid. In 9 Co. 77, a. Combes’s case, it is held, that if A. “as attorney of B.” and shewing the letter of attorney, makes a surrender, or delivers seisin of a tract of land, it is sufficient. That seems analogous to the case before us. As to that instrument of partition, if the end and scope of Jones’s bill had been for an undivided moiety of the tract of 11,375 acres, it might perhaps be doubted -whether a copy of that paper, supported only by the oath of the defendant, would be competent to narrow the claim. But *such is not the end of the bill, as I have already endeavoured to shew. The bill claims a specific tract of land, of which the appellants are already in possession, and therefore the exhibition of this paper to prove the very fact admitted by the claim in the bill, was unnecessary on the part of the defendant. If this instrument of partition had not been shewn in evidence at all, the result would have been precisely the same on the shewing of the appellants. But, if this paper was necessary for the defence of Robert Carter, it does not rest upon his answer merely. It is supported by the coincidence of boundaries specified in it, and the bill and deed under which the appellants claim, by the entry of Charles Carter into the same land, and by Thornley, the appellant’s agent, surveying by the same boundaries.
I am, therefore, of opinion, as upon the present record, that even the representatives of Charles Carter would have no claim to the land in controversy ; and, clearly, that the present appellants have not ; and that, even if they had, the representatives of Charles Carter should be also before the Court, in order to defend their right, or set it up in derogation of the claim of the appellants. Upon the whole I am of opinion, that the decree of dismission be affirmed.
JUDGR RLI5M1NG.
In August, 1789, the compromise took place between Robert Carter and Charles Carter, when the former conveyed to the latter, in consequence thereof, an undivided moiety of the Goose Creek tract of land, said to contain 11,375 acres, by deed bearing date the 14th day of August, 1789, as stated in the bill, and acknowledged by the answer, though the deed does not appear in the record. Previous to the 26th day of June, 1790, a partition of the land was made by and between Charles Carter, of the one part, and Bushrod Washington, the agent of Robert Carter, on the other part, by metes and bounds, as appears by a deed without date, under the seals of the *860 said Charles Carter and Bushrod Washington, a copy of which is stated *and referred to in the answer, and was read at the trial as one of the exhibits, and not excepted to ; and therefore is a proper document in the cause, and ought to have the same effect as the deed itself would have had, if produced. The division was made with reference to a survey and plat of the whole tract made by William Garland, in the year 1755. and divided into a number of lots, from one to forty-five inclusive, making in the whole 11,764, instead of 11,375 acres, called for by the patent; which gave a surplus of 389 acres. On the division made by Mr. Washington and Charles Carter, it appears by Garland’s survey, that 5,551 acres were allotted to Charles Carter, and the residue of 6,213 acres were retained for Robert Carter, making a difference in his favour of 662 acres, a moiety of which, taken from 6,213 acres reserved for Robert Carter, and added to 5,551 acres allotted to Charles Carter, would give to each party 5,882 acres ; so that, by Garland’s survey, Robert Carter got, on the division, only 331 acres more than a moiety of the whole tract of 11,764 acres. In consequence of this division made by metes and bounds, previous to the 26th day of June, 1790, Charles Carter took possession of the part allotted to him, and acquiesced in the division, without any objection or murmur; and, in October, 1794, after a lapse of more than four years, sold to Mr. Jones, for the consideration of three dollars per acre, “the Goose Creek tract of land, in the County of Loudoun, said to be a moiety of a tract granted to Robert Carter, by deed bearing date the 30th day of March, 1727, and to contain 11,375 acres.” And the land is described by lots numbered in Garland’s survey, and agreeing precisely with those mentioned in the deed of partition made by Charles Carter and Mr. Washington, on behalf of Robert Carter. After Mr. Jones’s purchase, a resurvey was necessary, to ascertain the number of acres, to fix the amount of the purchase money, at three dollars per acre. A survey was accordingly made by Aaron Thornley, by which it appears, that, instead of 5,551 acres, according to Garland’s survey, those several *lots contained only 4,87l acres, leaving a deficiency of 680 acres. But supposing the lots retained for Robert Carter, to fall short of Garland’s survey in the same ratio, there would be a deficiency in his part of 761 acres ; making the difference between the two lots still less than it appears by Garland’s survey, and shewing only 290 1-2 acres more than a moiety, were retained for ' Robert Carter. But, however that may be, it appears to me that Charles Carter was bound, as well at law as in equity, by the partition made by himself and Mr. Washington, by metes and bounds, of which he never complained to the day of his death ; and that Mr. Jones, having purchased the specific tract, (as appears by Charles Carter’s deed to him of December, 1794,) also described by me'tes and bounds, the partition was likewise binding on him : and he had (if any) still less cause of complaint than Carter ; as he purchased by the acre, and was bound to pay for no more land than was comprised in his deed.
Upon the whole, I concur in the opinion, that the decree is correct, and ought to be affirmed ; and that is the unanimous opinion of the Court.

Cb) 3 Hen. & Munf. p. 399.

(c) 3 Call, 267.

(d) 2 wash. 276.